**[J-66-2019] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.-A., A MINOR | : | No. 11 EAP 2019 |
| | : | |
| | : | Appeal from the Order of Superior |
| | : | Court entered on February 19, 2019 at |
| APPEAL OF: E.A., MOTHER | : | No. 893 EDA 2018 affirming in part |
| | : | reversing in part the Order dated |
| | : | March 16, 2018 in the Court of |
| | : | Common Pleas, Philadelphia County, |
| | : | Family Court Division at No. CP-51- |
| | : | DP-0002607-2016. |
| | : | |
| | : | ARGUED: September 10, 2019 |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED: January 22, 2020**

I agree completely with the majority's determination the evidence in this case did not clearly and convincingly show the level of intentionality required to support a finding of child abuse pursuant to 23 Pa.C.S. §6303 and 18 Pa.C.S. §302. I write separately, however, to distance myself from the portion of the majority's analysis that constructs an alternate interpretation of N.B.-A.'s Mother's behavior, which, in my view, draws no support from the record. *See* Majority Opinion, slip op. at 18. In reconsidering Mother's described "relaxed" demeanor at the hospital and inquiry to hospital staff about a place to order pizza, the majority indicates this Court is not bound by the parties' adverse inferences regarding this behavior, which DHS and Child's GAL characterize as indifference to N.B.-A.'s well-being; the majority further supplies an alternate interpretation, *i.e.*, Mother, who had been at the hospital for nearly twenty-four hours, attempted to keep the child happy, comfortable, and not alarmed. *Id.* As the majority also

observes, however, this Court **is** bound by the credibility determinations of the trial court. *Id.* at 11. And as the majority indicates, the trial court found credible the DHS investigator, Sharina Johnson. *Id.* at 6, *citing* N.T. Hearing, 3/16/18, at 85. Ms. Johnson, an investigator in DHS's sexual abuse unit, testified her experience included 150-200 sexual abuse investigations. N.T. Hearing, 3/16/18, at 12. Throughout her testimony, Ms. Johnson stated she and N.B.-A.'s medical providers noticed Mother appeared unusually unconcerned about the results of her child's chlamydia testing, both while at the hospital and during Ms. Johnson's interview in the home. *Id.* at 15, 22-24. Specifically, Ms. Johnson stated,

> Mother didn't appear to appropriately address [our] concerns of the [sexually transmitted infection] testing. She didn't take it in a serious manner for a child of that age to have contracted a sexually transmitted disease – very laxed [sic], and just presented in a manner [that was] very alarming to us. We just didn't understand that she would take something so serious so lightly.

*Id.* at 22. In response to an inquiry by the trial court, Ms. Johnson described Mother's reaction to N.B.-A.'s test results and DHS involvement as neither surprised nor visibly upset, but "really abnormal behaviors" in light of "[s]omething so serious," as Mother continued having her hair washed and blow-dried throughout Ms. Johnson's visit. *Id.* at 22-23. Additionally, medical providers' concerns about Mother's demeanor were at least significant enough to include in the hospital's Child Protective Services Report to DHS, which it filed after nearly twenty-four hours of interviews and observations of Mother and N.B.-A., stating, *inter alia*, "mother's affect was completely unconcerned, and she was wondering where she could order pizza." See Majority Opinion, slip op. at 2, *quoting* CPS Report, 11/18/16, at 7.

The record contains no other testimony or evidence to provide a different characterization or explanation of Mother's behavior. Respectfully, it is beyond our scope

of review to reweigh the evidence and reassess the witnesses' credibility, particularly where the Court has already determined the record — even viewed in the light most favorable to DHS and the GAL whose petitions prevailed in the trial court — is not sufficient to establish Mother, at a minimum, consciously disregarded some risk that allowed N.B.-A. to be sexually abused. *See* Majority Opinion, slip op. at 6, *quoting* N.T. Hearing, 3/16/18, at 85 (trial court "'found Ms. Johnson to be credible,' and 'found Dr. McColgan to be credible,' but 'did not find [Mother] to be credible.'");[1] *see id.* at 17-18 ("[Mother's] statements in and of themselves are insufficient to establish, under a clear and convincing evidence standard, that, prior to the time she made those statements, Mother knew or should have known of a danger posed to Child by Stepbrother, or that Mother disregarded warning signs of potential abuse. To conclude otherwise would be mere conjecture."). I therefore see no reason to credit Mother with the benefit of the doubt ascribed by the majority.

Moreover, in my view, Mother's purported indifference, her decision to lie about the men in her home, and her unbelievable explanations for her child's injury — particularly in light of her facially erroneous insistence the child was only ever under the supervision of Mother, Mother's aunt, or Grandmother — may still appropriately raise

---

[1] The majority describes the testimony of Dr. Maria McColgan as based on a brief visit with N.B.-A. for follow-up testing at St. Christopher's Hospital due to medical insurance restrictions at CHOP. Majority Opinion, slip op. at 5 n.4. In an effort to avoid minimizing the import of Dr. McColgan's testimony, which the trial court relied on to determine N.B.-A. was a victim of sexual abuse, I note the record also indicates the doctor was offered as an expert witness rather than a treating physician; counsel stipulated to the doctor's expertise in child abuse pediatric medicine as well as the admission of her *curriculum vitae* describing, among other things, her experience as director of the Child Protection Clinic at St. Christopher's Hospital for Children, N.T. Hearing, 3/16/18, at 44-45, and, in addition to her "brief visit" with N.B.-A., the doctor testified she reviewed all of N.B.-A's records from CHOP, *see id.* at 45-46.

questions about her ability to perform parental duties and to protect her child from abuse and further harm. *See, e.g.*, *In re L.V.*, 209 A.3d 399, 417 (Pa. Super. 2019) (upholding adjudication of dependency where medical evidence showed child's fractures were non-accidental and inconsistent with parents' explanations; "[parents'] conduct placed the health, safety or welfare of the Children at risk, and thus, [they] were dependent without parental care and control"); *In re R.P.*, 957 A.2d 1205, 1211-12 (Pa. Super. 2008) (medical evidence of child's injury, coupled with parents' failure to satisfactorily explain the injuries, properly supported trial court's conclusion children lacked proper care and supervision and its adjudication of dependency); *In the Interest of J.O.V.*, 686 A.2d 421, 423 (Pa. Super. 1996) (In adjudicating a child dependent,"[t]he parental duty extends beyond mere restraint from actively abusing a child; rather, there exists a duty to protect the child from the harm that others may inflict.").

Accordingly, while I firmly concur in the majority's ultimate holding these factors, without more, do not comprise sufficient evidence to label Mother a perpetrator of child abuse pursuant to the CPSL, I do so recognizing Pennsylvania's additional dependency provisions within our Juvenile Act, 42 Pa.C.S. §§6301-75*,* and Adoption Act, 23 Pa.C.S. §§2101-2938, vest in the juvenile courts the responsibility to consider all factors relevant to a parent's present capacity to care for and protect a child, and the authority to determine the tipping point at which parents' inability to appreciate risks requires the child's temporary or permanent removal from their care. *See* 42 Pa.C.S. §§6301-75 (providing for adjudication of dependency where, *inter alia*, parent's conduct places health, safety or welfare of child at risk; removal of dependent children from parental care;

and placement with alternative caregivers); 23 Pa.C.S. §§2101-2938 (providing for termination of parental rights and adoption).

Justice Baer joins this opinion.